2001 OK CR 28

**Elmer Allen REA, Appellant,**

v.

**STATE of Oklahoma, Appellee.**

No. F–2000–1452.

Court of Criminal Appeals of Oklahoma.

Oct. 3, 2001.

Billy Joe Ellington, Pawnee, OK, Attorney for Defendant.

Alan B. Foster Asst. District Attorney, Pawnee County Courthouse, Pawnee, OK, Attorney for the State.

Danny G. Lohmann, Appellate Defense Counsel, Norman, OK, Attorney for Appellant.

Sandra D. Howard, Assistant Attorney General, Oklahoma City, OK, Attorney for the State.

### SUMMARY OPINION

JOHNSON, Vice–Presiding Judge:

¶1 On February 4, 2000, Appellant, Elmer Allen Rea, was tried in a non-jury trial in Pawnee County District Court, Case No. CF–99–32 for Assault and Battery with a Dangerous Weapon, in violation of 21 O.S. 1991, § 645. The Honorable Jefferson D. Sellers, District Judge, found Appellant guilty. Formal sentencing was held March 17, 2000, and Judge Sellers sentenced Appellant to ten years imprisonment and a $500.00 fine. From the Judgment and Sentence imposed, Appellant filed this appeal.

¶ 2 Appellant raises the following proposition:

The sentence imposed was excessive and should be modified.

After thorough consideration of the proposition, and the entire record before us on appeal, including the original record, transcripts and briefs of the parties, we affirm the sentence for the reasons set forth below.

■ ¶ 3 Appellant contends that his sentence is excessive because he suffers from diminished mental capacity. Appellant's mental health history shows that he has been treated at various facilities, for various psychiatric and substance-abuse problems, since the age of twelve. Appellant was twenty-one years old at the time of sentencing.

¶ 4 Appellant opted for a trial to the district court, without a jury. He presented evidence concerning his mental health history. The Presentence Report, submitted to the district court before imposition of sentence, further detailed Appellant's mental health history. Thus, the sentencing body (in this case, the court) had a wealth of information about Appellant at its disposal before imposing sentence. The record affirmatively shows that the district court considered Appellant's mental health history in assessing the sentence, and we find no abuse of its broad discretion on that point.[1] *Cf. Bowers v. State*, 1982 OK CR 103, ¶ 15, 648 P.2d 835, 838 (jury's punishment assessment would not be disturbed on appeal, where jury considered evidence of defendant's diminished mental capacity in arriving at sentence). The court imposed the maximum sentence for the offense, but contrary to Appellant's argument, the sentence was imposed after full consideration of Appellant's personal circumstances and the circumstances of the case.[2] We find no merit to this portion of Appellant's proposition.

■ ¶ 5 Appellant further suggests that we abandon our "shock the conscience" standard of sentence review in favor of a "proportionality" standard, citing *People v. Milbourn*, 435 Mich. 630, 461 N.W.2d 1 (1990), as support.[3] We decline to do so. As the *Milbourn* court noted, *id.* at 2, the "preeminent requirement" in fashioning proper appellate review of sentences is to respect and give purpose to the sentencing scheme promulgated by the legislature. Legislatures, not courts, define punishment. *State v. Young*, 1999 OK CR 14, ¶ 26, 989 P.2d 949. Oklahoma law permits the sentencing body (judge or jury) to impose a sentence anywhere within a specified statutory range. Given that our state legislature has afforded such broad discretion to the sentencer, our "shock the conscience" standard provides an appropriate scope of review.

### DECISION

¶ 6 The Judgment and Sentence of the district court is hereby **AFFIRMED.**

LUMPKIN, P.J., and STRUBHAR and LILE, JJ., concurs.

CHAPEL, J., concurs in part/dissents in part.

1. The district court concluded that given his history, Appellant would constitute a greater threat to society if allowed probation.

2. The evidence showed that Appellant told a friend that he was going to find the victim and stab him; Appellant located the victim at a residence, and impersonated a police officer when he knocked on the door to gain entry; Appellant then forced his way into the home, ripped the telephone cord out of the wall, and stabbed the victim twice.

3. A sentence within the statutory range will not be modified on appeal unless, considering all the facts and circumstances, it shocks the conscience. *Maxwell v. State*, 1989 OK CR 22, ¶ 12, 775 P.2d 818, 820. In *Milbourn,* the Supreme Court of Michigan abandoned its "shock the conscience" standard of appellate sentence review in favor of a "proportionality" review. Despite similar language, we note important differences between the standard rejected in *Milbourn* and the sentence-review standard used by this Court, as well as fundamental differences in sentencing schemes. We also note that the term "proportionality," as used in *Milbourn,* specifically refers to the relationship of a sentence to the seriousness of the circumstances surrounding the *instant offense* and the *instant offender.* *Milbourn,* 461 N.W.2d at 3 & n. 2. We discern no appreciable difference between this scope of review, and our current standard, which also considers all the facts and circumstances of the case at hand and the appellant's background.

CHAPEL, J., concurring in part, dissenting in part:

¶ 1 I concur in the majority's decision affirming Rea's conviction. I believe Rea's sentence is disproportionate and would modify. I disagree with the majority's refusal to adopt a proportionality standard of review for excessive sentence claims. I have previously indicated I believe a proportionality standard is both fair and appropriate.[1] I do not see why the majority relies on the *People v. Milbourn*[2] explanation that appellate sentence review must respect and give purpose to the legislature's sentencing scheme. I agree that legislatures define punishments. I agree that our state legislature allows a sentencer broad discretion to impose sentence within a statutory range of punishment. However, the logic behind the conclusion that this mandates our standardless "shock the conscience" review escapes me. I conclude, instead, that in order to respect and give purpose to the legislature's intent to provide fair and just punishment for crimes, we must employ a meaningful standard of review in each case to ensure the sentencer's broad discretion is used fairly and wisely.

¶ 2 The Oklahoma legislature has specifically granted to this Court the authority to modify sentences.[3] When reviewing a sentence claimed to be excessive, our case law dictates the standard is whether or not the sentence "shocks the conscience" of the Court.[4] I contend that this is no standard at all. It is far too subjective to be called a standard. Under this measure, this Court's decision of whether a sentence is excessive turns on the personal values and beliefs of the judges sitting in any given case—whether each judge's conscience is "shocked" to the point that, collectively, the Court agrees a sentence demands relief. This not only results in disagreement among the Court in particular cases,[5] it results in wildly disparate sentences being affirmed for persons charged with the same offenses,[6] as well as wholly disproportionate sentences for crimes of differing magnitude.[7] The length of your sentence may depend, not on the seriousness of your crime, but on the county in which you were prosecuted. This result neither respects nor gives purpose to the legislature's sentencing scheme.

¶ 3 A review of our case law shows this Court has consistently used "shock the conscience" review in determining excessive sentence claims only since the mid–1960s.[8] Ear-

---

1. See *White v. State*, No. F–98–792 (Okl.Cr. Jan. 11, 2000) (not for publication).

2. 461 N.W.2d 1, 2 (Mich.1990).

3. "The appellate court may reverse, affirm or modify the judgment or sentence appealed from, and may, if necessary or proper, order a new trial or resentencing. In either case, the cause must be remanded to the court below, with proper instructions, and the opinion of the court, within the time, and in the manner, to be prescribed by rule of the court." 22 O.S.1991, § 1066.

4. See, e.g., *Bartell v. State*, 881 P.2d 92, 101 (Okl.Cr.1994).

5. See, e.g., *Bradley v. State*, 715 P.2d 78 (Okl.Cr. 1985) (100 year sentence for second degree burglary, after former conviction, modified); *Futerll v. State*, 501 P.2d 901 (Okl.Cr.1972) (300 year sentence for kidnapping); *Williams v. State*, 321 P.2d 990 (Okl.Cr.1957) (death penalty for kidnapping where sentencing court considered evidence of accompanying murder, a crime for which defendant was already convicted and received life in prison).

6. Compare *Reupert v. State*, 947 P.2d 198 (Okl. Cr.1997) (30 years for first degree rape) and

*Spencer v. State*, 795 P.2d 1075 (Okl.Cr.1990) (200 years for first degree rape). Compare *Lalli v. State*, 870 P.2d 175 (Okl.Cr.1994) (20 years, maximum sentence, for delivery of 4 ounces of marijuana, modified for prosecutorial misconduct) and *Burkhart v. State*, 727 P.2d 971 (Okl. Cr.1986) (5 years, delivery of 2 baggies of marijuana).

7. Most people agree something is wrong where, for example, a career burglar receives 55 years in prison for breaking into a car (*Scott v. State*, 763 P.2d 141 (Okl.Cr.1988)), while a rapist receives only seven years for a violent act of rape and five years for sodomy (*Casey v. State*, 732 P.2d 885 (Okl.Cr.1987)).

8. Several earlier cases refer to the Court's "conscience" in a variety of contexts other than sentencing. See *Ellis v. State*, 54 Okl.Cr. 295, 19 P.2d 972, 974 (1933) (punishment is cruel and unusual when so disproportionate to the character of the offense as to shock the conscience and moral senses of the people); *Williams v. State*, 21 Okl.Cr. 161, 205 P. 772, 773 (1922) (Court will disturb verdict where evidence so insufficient as to shock the conscience); *Turner v. State*, 8 Okl. Cr. 11, 126 P. 452, 464 (1912) (determining sufficiency of Information for murder, analogizes

lier cases focused on whether an "injustice" was done,[9] or whether the verdict was the result of passion and/or prejudice.[10] This Court has long held we will modify a sentence where justice requires.[11] In the early 1950s Judges Jones [12] and Powell [13] each authored several opinions referring to a "shock the conscience" standard of review without authority; these opinions are almost never cited for this standard in later cases. In 1962 the Court held in *McCluskey v. State*[14] that "[w]e do not have the power to modify a sentence unless we can conscientiously say that under all facts and circumstances the sentence is so excessive as to shock the conscience of the Court." [15] *McCluskey* cites as authority two cases, neither of which use this language.[16] In 1964 we repeated the standard without citation to authority in *Clouse v. State.*[17] Virtually all of the hundreds of cases in which we have since repeated the standard may be traced to either *McCluskey* or *Clouse.* Often we simply state the standard without resort to authority, and a handful of these cases have themselves been cited as authority. We have occasionally varied the language, stating, for example, "We will not find error unless the sentence is so greatly disproportionate to the crime committed that it shocks the conscience of the court." [18] This summary shows the standard "shocks the conscience", while in common usage for the last thirty years, has no firm historical precedent in our law. The Court has never explained the nature or limits of this standard of review, and in the overwhelming majority of cases it has been used to uphold sentences of as much as a thousand years.[19]

to Court's power to modify sentences where Court "in good conscience" is convinced the punishment was excessive); *Watson v. State,* 7 Okl.Cr. 590, 124 P. 1101, 1109 (1912) (Court uses every reasonable means to uphold convictions when it may do so "in good conscience").

**9.** *See, e.g., Jones v. State* 10 Okl.Cr. 216, 137 P. 121, 125 (1913) (on rehearing).

**10.** *See, e.g., Johnson v. State,* 453 P.2d 390, 392 (Okl.Cr.1969); *Epperson v. State,* 406 P.2d 1017, 1022 (Okl.Cr.1965); *Cowling v. State,* 327 P.2d 500, 505 (Okl.Cr.1958); *Driskell v. State,* 293 P.2d 638, 639 (Okl.Cr.1956); *Brown v. State,* 274 P.2d 779, 786 (Okl.Cr.1954); *Jones v. State,* 84 Okl.Cr. 81, 179 P.2d 484, 490 (1947); *White v. State,* 76 Okl.Cr. 147, 134 P.2d 1039, 1041 (1943); *Barnett v. State,* 25 Okl.Cr. 230, 219 P. 726, 727 (1923) (syllabus).

**11.** *See, e.g., Henderson v. State,* 695 P.2d 879, 883 (Okl.Cr.1985) [*Henderson* is later cited in support of the "shocks the conscience" standard, although it does not contain that language]; *Freeman v. State,* 681 P.2d 84, 86 (Okl.Cr.1984); *Bunn v. State,* 85 Okl.Cr. 367, 190 P.2d 464, 467 (1947); *Harvell v. State,* 97 Okl.Cr. 97, 258 P.2d 702, 704 (1953) (modification as an award of justice); *Parish v. State,* .77 Okl.Cr. 436, 142 P.2d 642, 646 (1943) (modification as an award of justice).

**12.** *Collins v. State,* 96 Okl.Cr. 335, 255 P.2d 292, 295 (Okl.Cr.1953); *Kelso v. State,* 96 Okl.Cr. 367, 255 P.2d 284, 289 (Okl.Cr.1953); *Hixon v. State,* 96 Okl.Cr. 311, 254 P.2d 387 (Okl.Cr.1953) (syllabus); *Berkihiser v. State,* 92 Okl.Cr. 31, 219 P.2d 1020, 1023 (1950).

**13.** *Palmer v. State,* 327 P.2d 722, 728 (Okl.Cr. 1958) (Court compelled to affirm penalty "in all conscience"); *Leasure v. State,* 275 P.2d 344, 347 (Okl.Cr.1954) (syllabus); *Story v. State,* 97 Okl. Cr. 116, 258 P.2d 706, 709 (1953) (error required Court "in all good conscience" to modify sentence); *Brumley v. State,* 96 Okl.Cr. 97, 249 P.2d 471, 474 (1952) (Court's "conscience dictates and compels us" to modify sentence).

**14.** 372 P.2d 623 (Okl.Cr.1962).

**15.** *Id.* at 634.

**16.** *Austin v. State,* 278 P.2d 240, 242 (Okl.Cr. 1954) (Court exercises power to modify sentence only for compelling reasons based on facts and circumstances in record); *Jones,* 179 P.2d at 490 (sentence is excessive where Court concludes it was rendered under passion or prejudice).

**17.** 389 P.2d 1002, 1006 (Okl.Cr.1964).

**18.** *Fox v. City of Tulsa,* 806 P.2d 79, 80 (Okl.Cr. 1991); *accord Rackley v. State,* 814 P.2d 1048, 1050 (Okl.Cr.1991). These cases cite *Virgin v. State,* 792 P.2d 1186, 1188 (Okl.Cr.1990), although *Virgin* does not use the word "disproportionate". In neither case does the Court conduct a proportionality review.

**19.** *See Fields v. State,* 501 P.2d 1390, 1393 (Okl. Cr.1972). Other lengthy sentences which have not shocked the Court's conscience include: *Rackley,* 814 P.2d at 1050 (250 years for Robbery with Firearms and 40 years for Possession of a Controlled Dangerous Substance after former conviction of two or more felonies); *Scott v. State,* 668 P.2d 339, 343 (Okl.Cr.1983) (200 year sentence for rape, 75 years for burglary and 300 years for Assault and Battery with Intent to Kill after former conviction of two or more felonies);

¶ 4 I once again propose that this Court abandon its subjective, standardless "shock the conscience" review and adopt a proportionality review. Taking into account the particular facts of each case and circumstances of each defendant, we should review a sentence to determine whether it is proportional to the seriousness of the crime and the sentences received by similar offenders. This review will provide a measure of objectivity, reassuring citizens that this Court's sentencing review is based on more than whim or personal belief.

¶ 5 A proportionality review also better meets the intent of the legislature in giving this Court the power to modify sentences. The legislative role is to set sentences for *classifications* of crimes, such as drug offenses, robbery or murder. In doing so, the legislature recognizes the principle of proportionality and determines some crimes are more serious than others: murder may be punished by a longer prison term than assault, and possession of even large amounts of marijuana may receive far less time than trafficking in cocaine. The legislature does not set sentences for individual crimes; that is the responsibility of the jury or trial court. The legislature has given this Court authority to review and modify sentences in individual cases. A proportionality review would not infringe on the legislature's right to set sentences for categories of crimes. By contrast, our standardless "shock the conscience" review for excessive sentences leaves open the real possibility that a defendant convicted of a "less serious" crime (as determined by the legislature) may receive more prison time than a defendant convicted of a "more serious" crime. This result cannot comport with the legislature's action in

making some crimes punishable by more years in prison than others.

¶ 6 I recognize that we determined we need not conduct a proportionality review in *Maxwell v. State.*[20] *Maxwell* held that, given our "shock the conscience" standard, a proportionality review is not constitutionally necessary to determine whether a sentence is excessive. We relied on a United States Supreme Court case, *Rummel v. Estelle,*[21] which held that a life sentence for felony theft (of $125.75) under a Texas recidivist statute was not excessive. Noting that *Rummel* could be eligible for parole in twelve years, the Supreme Court declined to apply a proportionality standard to the complex legislation.[22] However, three years later the United States Supreme Court conducted a lengthy historical analysis and reaffirmed its commitment to proportionality review in *Solem v. Helm.*[23] *Maxwell* distinguishes *Helm* by noting that case involved a defendant sentenced to life without parole, and determines *Helm* does not apply to regular felony sentences and requires a proportionality review only in life without parole cases.[24] As Judge Parks noted in his concurring opinion, in order to reach this conclusion *Maxwell* disregards specific language in *Helm* stating otherwise. *Helm* stated:

> There is no basis for the State's assertion that the general principle of proportionality does not apply to felony prison sentences.... There is no historical support for such an exception. The common-law principle incorporated into the Eighth Amendment clearly applied to prison terms. And our prior cases have recognized explicitly that prison sentences are subject to proportionality analysis.... [W]e hold as a matter of principle that a criminal sentence must be proportionate to

*Edwards v. State,* 645 P.2d 528, 529 (Okl.Cr. 1982) (300 year sentence for rape after former conviction of two or more felonies). In finding lengthy sentences did not shock the conscience, the Court has noted a sentence of several hundred years is, in effect, a life sentence. *Camp v. State,* 664 P.2d 1052, 1054 (Okl.Cr.1983); *Callins v. State,* 500 P.2d 1333, 1335 (Okl.Cr.1972).

**20.** 775 P.2d 818, 820–21 (Okl.Cr.1989).

**21.** 445 U.S. 263, 100 S.Ct. 1133, 63 L.Ed.2d 382 (1980).

**22.** 445 U.S. at 280–81, 100 S.Ct. at 1142–43.

**23.** 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983) *overruled in part by Harmelin v. Michigan,* 501 U.S. 957, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991).

**24.** *Maxwell,* 775 P.2d at 820; *but see id.* at 821 (Parks, V.P.J., concurring in result).

the crime for which the defendant has been convicted.[25]

¶ 7 The only way to determine whether a sentence is disproportionate is to conduct a proportionality review. *Helm* identified three factors in that review: (1) the gravity of the offense and the harshness of the penalty; (2) comparison of the sentences imposed to that of other criminals in the same jurisdiction; and (3) comparison with sentences imposed for commission of the same crime in other jurisdictions.[26] This three-part test was effectively modified by *Harmelin v. Michigan*,[27] a 1991 plurality opinion in which four justices reiterated the importance of proportionality review and two would have dispensed with it altogether. Justice Kennedy, writing for a narrow "majority", discarded the *Helm* test for an initial determination of whether a particular punishment was "grossly disproportionate" to the offense.[28] In doing so, the Court once again reaffirmed the importance of some type of proportionality review. Justice Kennedy suggests that only after that determination is made should a reviewing court engage in comparative analysis of sentences.

¶ 8 Whether under *Helm* or *Harmelin*, the objective criteria of proportionality review provide a simple, understandable standard which may be evenly applied. Several other states use some form of proportionality review, often citing either to *Helm* or *Harmelin*, in connection with an inquiry as to whether a sentence is so excessive as to shock the conscience.[29] Indeed, in several cases this Court has conducted proportionality review in trying to determine whether a particular sentence shocked the conscience.[30] In *People v. Milbourn* the Michigan Supreme Court, after lengthy deliberation, discarded its "shock the conscience" standard for a proportionality review.[31] That excellent opinion extensively analyses both the virtues of proportionality and the problematic subjective nature of "shock the conscience" review, concluding as I have that the latter is no standard at all, and the former best implements the legislature's sentencing scheme. In 1997 South Dakota, citing *Harmelin* and the Michigan opinion, held it would no longer apply the "shock the conscience" standard when analyzing claims of excessive sentence under the Eighth Amendment, but instead conduct a proportionality review.[32] I pro-

**25.** *Helm*, 463 U.S. at 289–90, 103 S.Ct. at 3009 (footnotes omitted) (citations omitted). The Supreme Court later noted *Rummel* "stood for the proposition that ... successful challenges to the proportionality of particular sentences should be exceedingly rare." *Hutto v. Davis*, 454 U.S. 370, 374, 102 S.Ct. 703, 705, 70 L.Ed.2d 556 (1982).

**26.** *Helm*, 463 U.S. at 290–91, 103 S.Ct. at 3010.

**27.** 501 U.S. 957, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991) (plurality opinion).

**28.** *Harmelin*, 501 U.S. at 1005, 111 S.Ct. at 2707.

**29.** *See, e.g.,* California: *People v. Martinez*, 71 Cal.App.4th 1502, 84 Cal.Rptr.2d 638, 643 (1999); *In Re Lynch*, 8 Cal.3d 410, 105 Cal.Rptr. 217, 503 P.2d 921, 930 (1972); Idaho: *State v. Rogerson*, 132 Idaho 53, 966 P.2d 53, 58 (Ct.App. 1998); *State v. Brown*, 121 Idaho 385, 825 P.2d 482, 491 (1992); Indiana: *Brewer v. State*, 646 N.E.2d 1382, 1386 (Ind.1995); Kansas: *State v. Freeman*, 223 Kan. 362, 574 P.2d 950, 956 (1978); Louisiana: *State v. Lobato*, 603 So.2d 739, 751 (La.1992); Massachusetts: *Commonwealth v. Dunn*, 43 Mass.App.Ct. 58, 680 N.E.2d 1178, 1182 (1997); *Commonwealth v. Alvarez*, 413 Mass. 224, 596 N.E.2d 325, 331 (1992); Missouri: *State v. Carlton*, 733 S.W.2d 23, 27 (Mo.Ct.App.1987); New Jersey: *State v. Burton*, 309 N.J.Super. 280, 706 A.2d 1181, 1185 (1998);

*State v. Roth*, 95 N.J. 334, 471 A.2d 370, 373 (1984); New York: *People v. Broadie*, 37 N.Y.2d 100, 371 N.Y.S.2d 471, 332 N.E.2d 338, 342 (1975); Tennessee: *State v. Harris*, 844 S.W.2d 601, 602–03 (Tenn.1992); Texas: *Puga v. State*, 916 S.W.2d 547, 549 (Tex.App.1996); Vermont: *State v. Saari*, 152 Vt. 510, 568 A.2d 344, 348 (1989); West Virginia: *State v. Goff*, 203 W.Va. 516, 509 S.E.2d 557, 564 (1998); Wyoming: *Smith v. State*, 922 P.2d 846, 848 (Wyo.1996).

**30.** *Day v. State*, 784 P.2d 79, 85 (Okl.Cr.1989); *Tyler v. State*, 777 P.2d 1352, 1354 (Okl.Cr.1989); *Jones v. State*, 764 P.2d 914, 918 (Okl.Cr.1988); *Lamb v. State*, 756 P.2d 1236, 1238 (Okl.Cr. 1988); *Palmer v. State*, 719 P.2d 1285, 1289 (Okl.Cr.1986); *Blankenship v. State* 719 P.2d 829, 832 (Okl.Cr.1986); *Young v. State*, 701 P.2d 415, 418 (Okl.Cr.1985); *Martin v. State*, 674 P.2d 37, 42 (Okl.Cr.1983); *Underwood v. State*, 484 P.2d 889, 890 (Okl.Cr.1971).

**31.** *People v. Milbourn*, 435 Mich. 630, 461 N.W.2d 1 (1990).

**32.** *State v. Bonner*, 577 N.W.2d 575, 579–80 (S.D.1998). This was reaffirmed in *State v. Jensen*, 1998 SD 52, 579 N.W.2d 613, 623–24. Louisiana reviews excessive sentence claims for abuse of discretion using a three-prong test com-

pose we join these states in abandoning a subjective, unworkable "standard" for objective criteria which will better aid us in fulfilling our appellate function, as defined by the legislature, in reviewing claims of excessive sentences.

paring: 1) the nature of the crime, 2) the nature and background of the offender, and 3) the sentence imposed for similar crimes by the same court and other courts. *State v. Watts*, 746 So.2d 58, 64 (La.Ct.App.1999).